IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FEDERAL RESERVE BANK OF ST. LOUIS,  )<br>  )<br>       Plaintiff,  )<br>  )<br>  vs.  )<br>  )<br>MCCARTHY BUILDING COMPANIES, INC.,  )<br>Serve: National Registered Agents, Inc.  )<br>      120 South Central Avenue  )<br>      Clayton, MO 63105  )<br>  )<br>and  )<br>  )<br>WINCO WINDOW COMPANY INC.,  )<br>Serve: Wilfred J. Krenn  )<br>      6200 Maple Avenue  )<br>      University City, MO 63130  )<br>  )<br>and  )<br>  )<br>HILBOLDT CURTAINWALL, INC.,  )<br>Serve: Jane B. Hilboldt  )<br>      4981 Flyer Avenue  )<br>      St. Louis, MO 63139  )<br>  )<br>and  )<br>  )<br>ARCHITECTURAL GLASS PRODUCTS, LLC,  )<br>Serve: Wilfred J. Krenn  )<br>      6200 Maple Avenue  )<br>      University City, MO 63130  )<br>  )<br>      Defendants.  )  | Case No. |

## **COMPLAINT**

**COMES NOW** Plaintiff, Federal Reserve Bank of St. Louis, by and through its attorneys, and for its causes of action against Defendants states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Federal Reserve Bank of St. Louis (the "Bank"), is an instrumentality of the federal government and is a federally chartered corporation established under the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.* Plaintiff is the owner of and located at One Federal Reserve Bank Plaza, St. Louis, Missouri.

2. The Defendant McCarthy Building Companies, Inc. ("McCarthy") is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in St. Louis County, Missouri. At all times mentioned in this Complaint, Defendant McCarthy was engaged in the business of providing, among other things, preconstruction, project management, building and construction management services.

3. Defendant Winco Window Company, Inc. ("Winco") is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in University City, Missouri. At all times mentioned in this Complaint, Defendant Winco was engaged in the business of, among other things, designing, manufacturing, assembling, finishing, selling and/or otherwise distributing architectural and heavy commercial aluminum windows.

4. Defendant Hilboldt Curtainwall, Inc. ("Hilboldt") is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in St. Louis City, Missouri. At all times mentioned in this Complaint, Defendant Hilboldt was engaged in the business of, among other things, designing, engineering, fabricating, building and installing custom exterior wall enclosures.

5. Defendant Architectural Glass Products, LLC ("AGP") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miramar, Florida. Defendant AGP is a subsidiary of Defendant Winco and does business in the

State of Missouri.  At all times mentioned in this Complaint, Defendant AGP was engaged in the business of, among other things, designing, manufacturing, assembling, fabricating, selling and/or otherwise distributing advanced tempered laminated and insulated glass.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to the Federal Reserve Act, 12 U.S.C. § Section 632 and 28 U.S.C. § Section 1331 in that the district courts of the United States have original jurisdiction in any civil action in which a Federal Reserve Bank is a party.

7. Venue is proper in the United States District Court for the Eastern District of Missouri  pursuant to 28 U.S.C. 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

8. On or about November 9, 2004, Plaintiff Bank and Defendant McCarthy entered into a contract, as amended from time to time (the "Contract"), following a bid process, wherein Defendant McCarthy agreed to provide construction management services for the construction of certain renovations and an addition to the Bank's headquarters located at One Federal Reserve Bank Plaza, St. Louis, Missouri (the "Project").

9. Pursuant to the terms of the Contract, Defendant McCarthy agreed to provide all necessary and related construction management services, and other consultant services for the successful accomplishment of the Project.  Additionally, Defendant McCarthy represented that the construction management services would be provided on a basis consistent with the skill, highest standards and quality prevailing among construction managers of superior knowledge

and skill engaged in practice throughout the United States, under the same or similar circumstances, involving design, complexity and construction of facilities such as the Project.

10. In paragraph 8.6 of the Contract, Defendant McCarthy further warranted and represented that "all labor shall be performed in the best and most workmanlike manner by persons skilled in their respective trades. The standards of the work required throughout shall be of such grade as will bring results of the first class only. In no case will workmanship or materials be accepted which are not the highest standards."

11. The Contract further provided in Section 8.12:

> If any of the work is found to be defective or not in accordance with these documents within one year of the date of completion of the work, or within one year after acceptance by the Bank of designated equipment, *or within such longer period of time as may be prescribed by law or by the terms of any applicable special warranties required by these documents*; and, unless the Bank has previously given construction manager an express written acceptance of such defective or non-conforming condition, construction manager shall correct such work promptly after receipt of a written notice from the Bank. This obligation shall survive termination or expiration of the Contract between the Bank and construction manager. The Bank shall give such notice promptly after discovery of the condition. (emphasis added)

12. In paragraph 8.8 of the Contract, Defendant McCarthy agreed, to the fullest extent provided by law, to indemnify and hold harmless the Bank and Bank's agents, officers and employees from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the work by McCarthy and its subcontractors, and the employees or agents of both. McCarthy also agreed that should McCarthy, its subcontractors, or the employees or agents of either, wrongfully cause damage to the work or property of the Bank or any third party, or to other work on the site, McCarthy would promptly remedy such damage to the satisfaction of the Bank. Paragraph 8.8 further

provides that the indemnification obligations set forth therein shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for McCarthy or any subcontractor under worker's compensation acts, disability benefit acts or other employee benefits acts.

13. In reliance on the various representations, warranties and guarantees of Defendant McCarthy, Plaintiff entered into the Contract with said Defendant.

14. Among other things, the specifications for the Project called for the installation of new windows. The specifications for the Project included basically two main window types: Winco model nos. 3350 and 1550. Generally, the windows were specified to be fixed aluminum-framed laminated and insulated glass, designed to prevent buckling, opening of joints, overstressing of components, failure of joint sealants, failure of connections, be resistant to blasts and other detrimental effects, which was desired by the Bank for security reasons.

15. Defendant McCarthy retained Defendant Hilboldt, a subcontractor, to perform work on the Project. Hilboldt retained Defendant Winco, and Winco retained Defendant AGP. Each of these Defendants was involved in some aspect of the design, manufacture, assembly, installation and/or sale of the new windows. McCarthy entered into a subcontract with Hilboldt, which installed the windows that Hilboldt purchased from Winco, the manufacturer of the windows. Winco entered into an agreement with AGP to manufacture the glass for the windows.

16. The windows were installed in four phases during the construction in the period from January 2008 to September 2008. The earliest substantial completion date, based on the warranties provided Bank pursuant to Defendant McCarthy's letter of warranty dated November 14, 2008, and the window specifications, was March 8, 2008.

17. Special warranties were issued by Defendant Winco for the window workmanship and glazing; Defendant Hilboldt for the installation of the windows; and Defendant AGP for the manufacture of the laminated and insulated glass. The Bank is a direct beneficiary of Defendant Hilboldt's warranty and a third-party beneficiary of Defendants Winco's and AGP's warranties.

18. On or about June 16, 2011, Defendant Hilboldt inspected the windows in response to the bonding agent's request to close out the bonding for the window installation. The inspection revealed that a significant percentage of the windows had begun to delaminate along the edges.

19. On or about August 15, 2011, the Bank sent a notice to Defendants advising that the windows appeared to be defective. Thereafter, the Bank hired an expert window consultant to inspect the windows to identify workmanship problems or deviations from the plans and specifications. In February 2012, four windows were removed for testing; two were removed for testing by Bank and two were removed for testing by Winco.

20. On or about October 9, 2012, Bank's expert issued an extensive report wherein he opined, to a reasonable degree of scientific certainty, that the windows did not meet industry standards and were at various levels of delamination, and therefore defective. He further opined the delamination was progressive and most or all of the glass laminates under the Project would eventually delaminate. In the expert's opinion, to a reasonable degree of scientific certainty, replacement of all the windows was the only reliable remedy. McCarthy was provided a copy of Bank's expert's report (which, to Bank's knowledge, gave copies of report to the other Defendants).

21. In meetings held on August 19, 2011 and January 24, 2013, and in discussions thereafter, between Bank and employees, agents and representatives of some or all of the

Defendants, the issues involving the delamination of the windows were discussed in an effort to reach a satisfactory solution, but to no avail. For over 21 months, Bank has endeavored to resolve the issues in this Complaint through discussions with Defendants, but the parties have not reached a resolution of the matter.

22.  The Bank completed a survey of the delaminated window units. Based on the survey, the delamination is pervasive and progressive. To date and to Bank's knowledge, at least 498 window glazings are affected. The following is a breakdown by floors:

1st floor – at least a 60% failure
2nd floor – at least a 53% failure
3rd floor – at least a 64% failure
4th floor – at least a 58% failure
5th floor – at least a 78% failure
6th floor – at least a 91% failure

23.  Plaintiff has formally demanded that all Winco windows installed by Defendant McCarthy and the other Defendants be replaced at no charge to Plaintiff, at a time and upon conditions acceptable to Plaintiff.

24.  Although Defendants have been notified by Plaintiff of the defects in the windows, and Plaintiff has demanded that all windows be replaced, Defendants have failed to remedy the defects or compensate Plaintiff for the defective windows.

## COUNT I

## BREACH OF CONTRACT AGAINST DEFENDANT MCCARTHY

25.  Plaintiff repeats and realleges all of the foregoing paragraphs as if the same were fully set forth at length herein.

26.  Plaintiff and Defendant McCarthy entered into the Contract for the Project as set out in paragraph 8 hereof.

27. Defendant breached the Contract with the Plaintiff in numerous respects, including but not limited to, permitting its subcontractors to install windows that failed to meet specifications; selecting substandard and/or inexperienced subcontractors to perform the obligations under the Contract; failing to adequately take supervision and/or construction management of the Project as Defendant contracted to do; selecting poor and substandard materials for use in the construction of the Project; and failing to acknowledge and/or correct clearly identified defects and deviations in the specifications for the windows.

28. On information and belief, there have been other projects in which certain Defendants have been involved where the glass has delaminated.

29. At all times, Plaintiff complied with its obligations under the Contract and has paid Defendant McCarthy the entire amount due under the Contract.

30. Plaintiff seasonably notified Defendant in writing after discovery of the window defects and afforded Defendant a reasonable opportunity to inspect the windows and correct the defects, which Defendant has failed to do.

31. As a result of Defendant's breach of contract, Plaintiff has been damaged as follows:

> a. Plaintiff has incurred and will continue to incur substantial costs in connection with the remediation of the substantial defects in the windows, including but not limited to replacement of all the windows installed by Defendant with windows that meet the specifications of the Contract;
>
> b. Plaintiff will incur costs to retain alternative contractors to replace the windows;

    c. Plaintiff will incur costs to relocate its employees from the floors where the windows are located while the windows are being replaced;

    d. Plaintiff will incur costs for additional security, maintenance and housekeeping during the period the windows are being replaced;

    e. Plaintiff has incurred costs to retain an expert to inspect and identify defects in the windows; and

    f. Plaintiff may incur additional currently unforeseen costs in connection with replacing the windows.

32. The sum total of these various categories of damages is estimated to exceed $1,500,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant McCarthy, under Count I of its Complaint, for actual and compensatory damages in an amount that is fair and reasonable, its attorney's fees and costs, and for such other and additional relief as may be just and proper under the circumstances.

## COUNT II

## NEGLIGENT AND DEFECTIVE WORKMANSHIP AGAINST DEFENDANTS

33. Plaintiff repeats and realleges all of the foregoing paragraphs as if the same were fully set forth at length herein.

34. Defendant McCarthy had a duty to ensure that all work on the Project was performed in a good and workmanlike manner.

35. Defendants each had a duty to perform all work on the Project in a good and workmanlike manner.

36. Defendant McCarthy breached this duty by failing to provide Plaintiff with skilled and qualified subcontractors to perform the work on the Project.

37. Defendant McCarthy further breached its duty to the Plaintiff by failing to adequately supervise and/or manage the subcontractors and the Project.

38. Defendants each breached their duty to the Plaintiff by failing to provide materials for the Project that were free of defect and/or as specified under the Contract.

39. Defendants further breached their duty to the Plaintiff by permitting defective windows to be installed in the Project and by failing to correct the defects identified.

40. Plaintiff seasonably notified Defendants in writing after discovery of the window defects and afforded Defendants a reasonable opportunity to inspect the windows and correct the defects, which Defendants have failed to do.

41. As a result of Defendants breach of their duty to Plaintiff, Plaintiff has been damaged as follows:

   a. Plaintiff has incurred and will continue to incur substantial costs in connection with the remediation of the substantial defects in the windows, including but not limited to replacement of all the windows installed by Defendants with windows that meet the specifications of the Contract;

   b. Plaintiff will incur costs to retain alternative contractors to replace the windows;

   c. Plaintiff will incur costs to relocate its employees from the floors where the windows are located while the windows are being replaced;

   d. Plaintiff will incur costs for additional security, maintenance and housekeeping during the period the windows are being replaced;

  e. Plaintiff has incurred costs to retain an expert to inspect and identify defects in the windows; and

  f. Plaintiff may incur additional currently unforeseen costs in connection with replacing the windows.

42. The sum total of these various categories of damages is estimated to exceed $1,500,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants McCarthy, Winco, Hilboldt and AGP, jointly and severally, under Count II of its Complaint, for actual and compensatory damages in an amount that is fair and reasonable, its attorney's fees and costs, and for such other and additional relief as may be just and proper under the circumstances.

## COUNT III

### BREACH OF EXPRESS WARRANTIES AGAINST DEFENDANTS

43. Plaintiff repeats and realleges all of the foregoing paragraphs as if the same were fully set forth at length herein.

44. Defendants expressly warranted to Plaintiff that the windows would conform to the specifications and requirements of the Bank and that the windows would not delaminate. The Bank is a direct beneficiary of Defendants McCarthy's and Hilboldt's warranties and a third-party beneficiary of Defendants Winco's and AGP's warranties.

45. Plaintiff seasonably notified Defendants in writing after discovery of the window defects and afforded Defendants a reasonable opportunity to inspect the windows and correct the defects, which Defendants have failed to do.

46. Defendants have breached their express warranties by failing to supply Plaintiff with windows that would not delaminate.

47. Defendants' breach of their express warranties proximately caused Plaintiff's damages and anticipated damages as follows:

   a. Plaintiff has incurred and will continue to incur substantial costs in connection with the remediation of the substantial defects in the windows, including but not limited to replacement of all the windows installed by Defendants with windows that meet the specifications of the Contract;

   b. Plaintiff will incur costs to retain alternative contractors to replace the windows;

   c. Plaintiff will incur costs to relocate its employees from the floors where the windows are located while the windows are being replaced;

   d. Plaintiff will incur costs for additional security, maintenance and housekeeping during the period the windows are being replaced;

   e. Plaintiff has incurred costs to retain an expert to inspect and identify defects in the windows; and

   f. Plaintiff may incur additional currently unforeseen costs in connection with replacing the windows.

48. The sum total of these various categories of damages is estimated to exceed $1,500,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants McCarthy, Winco, Hilboldt and AGP, jointly and severally, under Count III of its Complaint, for actual and compensatory damages in an amount that is fair and reasonable, its attorney's fees and costs, and for such other and additional relief as may be just and proper under the circumstances.

## COUNT IV

## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AGAINST DEFENDANTS

49. Defendants impliedly warranted to Plaintiff that the windows installed in the Project would be merchantable and fit for the ordinary purpose for which they were to be used.

50. Plaintiff seasonably notified Defendants in writing after discovery of the window defects and afforded Defendants a reasonable opportunity to inspect the windows and correct the defects, which Defendants have failed to do.

51. Defendants have breached their implied warranties of merchantability in that delamination of the windows has made them of unmerchantable quality.

52. Defendants' breach of their implied warranties of merchantability proximately caused Plaintiff's damages as follows:

   a. Plaintiff has incurred and will continue to incur substantial costs in connection with the remediation of the substantial defects in the windows, including but not limited to replacement of all the windows installed by Defendants with windows that meet the specifications of the Contract;

   b. Plaintiff will incur costs to retain alternative contractors to replace the windows; Plaintiff will incur costs to relocate its employees from the floors where the windows are located while the windows are being replaced;

   c. Plaintiff will incur costs for additional security, maintenance and housekeeping during the period the windows are being replaced;

   d. Plaintiff has incurred costs to retain an expert to inspect and identify defects in the windows; and

13

    e.   Plaintiff may incur additional currently unforeseen costs in connection with replacing the windows.

53.    The sum total of these various categories of damages is estimated to exceed $1,500,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants McCarthy, Winco, Hilboldt and AGP, jointly and severally, under Count IV of its Complaint, for actual and compensatory damages in an amount that is fair and reasonable, its attorney's fees and costs, and for such other and additional relief as may be just and proper under the circumstances.

### COUNT V

### BREACH OF IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANTS

54.    Defendants impliedly warranted to Plaintiff that the windows would be fit for the particular purpose for which such windows are used.

55.    Defendants knew or should have known of the particular purpose for which the windows would be used at the time the Project was bid and at the time the Contract and subcontracts were entered into.

56.    Plaintiff reasonably relied on Defendants' skill, expertise and judgment that the windows were fit for the particular purpose for which they would be used.

57.    Plaintiff seasonably notified Defendants in writing after discovery of the window defects and afforded Defendants a reasonable opportunity to inspect the windows and correct the defects, which Defendants have failed to do.

58.    Defendants have breached their implied warranties of fitness for a particular purpose in that delamination of the windows have made them unfit for their intended use.

59. Defendants' breach of their implied warranties of fitness for a particular purpose proximately caused the Plaintiff damages and anticipated damages as follows:

   a. Plaintiff has incurred and will continue to incur substantial costs in connection with the remediation of the substantial defects in the windows, including but not limited to replacement of all the windows installed by Defendants with windows that meet the specifications of the Contract;

   b. Plaintiff will incur costs to retain alternative contractors to replace the windows;

   c. Plaintiff will incur costs to relocate its employees from the floors where the windows are located while the windows are being replaced;

   d. Plaintiff will incur costs for additional security, maintenance and housekeeping during the period the windows are being replaced;

   e. Plaintiff has incurred costs to retain an expert to inspect and identify defects in the windows; and

   f. Plaintiff may incur additional currently unforeseen costs in connection with replacing the windows.

60. The sum total of these various categories of damages is estimated to exceed $1,500,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants McCarthy, Winco, Hilboldt and AGP, jointly and severally, under Count V of its Complaint, for actual and compensatory damages in an amount that is fair and reasonable, its attorney's fees and costs, and for such other and additional relief as may be just and proper under the circumstances.

Respectfully submitted,

WHITE COLEMAN & ASSOCIATES, LLC


By: /s/ Dorothy L. White-Coleman
    Dorothy L. White-Coleman, #31693MO
    Susie M. McFarlind, #29992MO
    500 N. Broadway, Suite 1300
    St. Louis, Missouri 63102
    (314) 621-7676 Telephone
    (314) 621-0959 Fax
    whitecoleman@whitecoleman.net
    Attorneys for Defendant Federal Reserve
    Bank of St. Louis